UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCOIS P. GIVENS,<br><br>             Plaintiff,<br><br>      v.<br><br>COUNTY OF SACRAMENTO, et al.,<br><br>             Defendants. | No.  2:15-cv-0720 JAM KJN PS<br><br><br>ORDER |

INTRODUCTION

In this action, plaintiff Francois Givens, proceeding without counsel and *in forma pauperis*, seeks relief under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), and also raises various supplemental state law claims.[1] The court previously dismissed plaintiff's original complaint, but with leave to amend. Plaintiff's first amended complaint is now before the court for screening.

As an initial matter, the court observes that, although plaintiff is presently a state prisoner, his incarceration is not related to the claims raised herein, which are based on his April 11, 2014 arrest and subsequent release from custody due to medical concerns. As such, the Clerk of Court is directed to re-designate this action as a non-prisoner *pro se* action. The new case title and

---

[1] Plaintiff consented to proceed before a United States Magistrate Judge for all purposes, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (ECF No. 7.)

1

number shall be <u>Givens v. County of Sacramento, et al.</u>, 2:15-cv-720 JAM KJN PS.

Furthermore, after carefully reviewing plaintiff's first amended complaint and the applicable law, the court finds that plaintiff states potentially cognizable 42 U.S.C. § 1983 claims against defendants Taylor and Becker, and a potentially cognizable ADA claim against the County of Sacramento, but that the remaining claims and defendants should be dismissed with prejudice.

BACKGROUND

Plaintiff, who claims to be a mobility-impaired individual, alleges that on April 11, 2014, Sacramento County sheriff deputies Adam Taylor and Ken Becker responded to a call by the co-occupant of plaintiff's apartment, requesting assistance to retrieve her belongings. According to plaintiff, although the dispute with the co-occupant had actually been resolved, defendant Becker failed to inform defendant Taylor of that resolution, and defendant Taylor nonetheless arrested plaintiff. Plaintiff claims that, even though the arrest was ostensibly based on an outstanding misdemeanor traffic warrant, the deputies actually arrested him because plaintiff argued with the deputies about his rights under landlord-tenant laws. Plaintiff further alleges that defendant Taylor used excessive force in making the arrest by slamming plaintiff's face into the wall and tightly cuffing plaintiff, and also refused to allow plaintiff to gather his walking cane, pants, socks, shoes, wallet, and other personal items prior to the arrest.

According to plaintiff, he was ultimately refused admission to the county jail due to his "serious medical conditions," whereupon defendants Taylor and Becker took him to Sutter General Hospital, ten miles away from plaintiff's home, and advised medical staff that he was not under arrest and was free to leave once medical treatment was completed. However, because plaintiff allegedly had no money or phone, he was required to walk home wearing hospital-provided socks and paper pants, resulting in further injury, pain, and humiliation.

In the latter part of April 2014, plaintiff filed a citizen's complaint with the Internal Affairs Division of the Sacramento County Sheriff's Department. Thereafter, around July 8, 2014, while incarcerated on unrelated charges, plaintiff was interviewed regarding his complaint by defendant sergeant Witherspoon. Plaintiff alleges that defendant Witherspoon failed to

properly investigate the incident and improperly found that defendants Taylor and Becker had not violated the law.

Subsequently, on October 10, 2014, plaintiff mailed a tort claim against defendants Taylor and Becker to the California Victim's Compensation and Government Claims Board. After receiving notice on October 16, 2014, that he had filed a tort claim with the wrong entity, plaintiff mailed the tort claim and an application for leave to present a late claim to the Sacramento County Board of Supervisors on October 26, 2014. Thereafter, on November 12, 2014, defendant Charles Torretta, a Sacramento County claims administrator, allegedly improperly denied plaintiff leave to file a late tort claim.

Based on the above, plaintiff asserts claims for violation of his First, Fourth, and Fourteenth Amendment rights under 42 U.S.C. § 1983; violation of his rights under the Americans with Disabilities Act ("ADA"); as well as numerous state law tort claims against defendants Taylor, Becker, Witherspoon, Torretta, Sacramento County Sheriff Scott Jones, the County of Sacramento, and the Director of the Sacramento County Board of Supervisors. Plaintiff seeks, *inter alia*, monetary damages.

DISCUSSION

Federal Claims

*42 U.S.C. § 1983 Claims for Violation of the Fourth and Fourteenth Amendments*

Liberally construed, the first amended complaint asserts two types of claims for violation of the Fourth Amendment (as made applicable to state actors by virtue of the Fourteenth Amendment): a false arrest/false imprisonment claim and an excessive force claim.

With respect to the false arrest/false imprisonment claim, it is well established that it is the presence or absence of objective probable cause, and not the subjective motivation of the arresting officer, that is significant with respect to the reasonableness of a seizure under the Fourth Amendment. Whren v. United States, 517 U.S. 806, 813-14 (1996). To prevail on a § 1983 claim for false arrest and imprisonment, a plaintiff has to demonstrate that there is no probable cause to arrest him or other justification. Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998); Dubner v. City and County of San Francisco, 266 F.3d 959, 964-65 (9th

Cir. 2001).

Here, plaintiff concedes that defendants Taylor and Becker were legitimately on his property in an effort to resolve a property dispute between plaintiff and the co-occupant of his apartment. Plaintiff also concedes that he had an outstanding misdemeanor traffic warrant, of which defendants Taylor and Becker were aware, and also concedes that he became "verbally embroiled with defendant Taylor over landlord/tenant laws." (ECF No. 19 at 4-5.) Because plaintiff's factual allegations demonstrate sufficient facts supporting probable cause for plaintiff's arrest, plaintiff fails to state a Fourth Amendment claim for false arrest. As such, plaintiff's false arrest/false imprisonment claim is dismissed.

However, plaintiff alleges sufficient facts supporting an excessive force claim. Plaintiff alleges that defendant Taylor slammed plaintiff's face into a wall, yanked his arms behind him, and tightly cuffed his hands. (ECF No. 19 at 5.) Liberally construed, plaintiff's allegations also state a potentially cognizable failure to protect claim against defendant Becker based on his alleged failure to inform defendant Taylor that plaintiff had purportedly resolved the property dispute with his co-occupant (ECF No. 19 at 4), or defendant Becker's purported failure to intervene during defendant Taylor's alleged use of excessive force.

*42 U.S.C. § 1983 Claim for Retaliation in Violation of the First Amendment*

Plaintiff alleges that defendants Taylor and Becker conspired to retaliate against plaintiff for exercising his free speech rights under the First Amendment. (ECF No. 19 at 13, 15.) Plaintiff contends that those defendants disregarded the resolution of plaintiff's property dispute with his co-occupant, and because plaintiff argued with Taylor, decided to "teach plaintiff a lesson" and arrest him, because they considered plaintiff to be "stupid" and an "asshole," and because he "would not listen" to them. (ECF No. 19 at 15.)

The First Amendment generally prohibits government officials from subjecting a citizen to adverse action in "retaliation for protected speech." Crawford-El v. Britton, 523 U.S. 574, 592 (1998). Nevertheless, the Supreme Court has also previously held that a plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause. See Hartman v. Moore, 547 U.S. 250, 265-66 (2006).

4

In the wake of Hartman, it was unclear whether the requirement to show a lack of probable cause for retaliatory prosecution claims also extended to retaliatory arrest claims. The Supreme Court itself has not recognized a constitutional right to be free of retaliatory arrest if the arrest was otherwise supported by probable cause. See Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012) (noting that the Supreme Court "has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause"). Nevertheless, the Ninth Circuit concluded in Ford v. Yakima that its "2006 decision in Skoog established that an individual has a right to be free from retaliatory police action, even if probable cause existed for that action." Ford, 706 F.3d 1188, 1195-96 (9th Cir. 2013). In Skoog v. County of Clackamas, the Ninth Circuit resolved an "open question" and concluded that "a plaintiff need not plead the absence of probable cause in order to state a claim for retaliation." Skoog, 469 F.3d 1221, 1232 (9th Cir. 2006). There, a police officer executed a search warrant and seized the plaintiff's property after the plaintiff sued a different officer, and the plaintiff asserted claims against him for violations of both the Fourth and First Amendments. After determining that probable cause existed for the search, the court nonetheless concluded that the plaintiff stated the elements of a First Amendment retaliation claim. Skoog, 469 F.3d at 1235. Subsequently in Ford, the court reversed a grant of qualified immunity to a police officer after he booked and jailed a plaintiff for criticizing a traffic stop, which was supported by probable cause but which the plaintiff believed was racially motivated. Ford, 706 F.3d at 1193. The court noted that "[a]t the time the officers acted in 2007, the law in this Circuit gave fair notice that it would be unlawful to jail Ford in retaliation for his First Amendment activity." Id. at 1195.[2]

In light of the above authorities, plaintiff states a potentially cognizable First Amendment retaliatory arrest claim against defendants Taylor and Becker.

////

////

---

[2] Notwithstanding Ford and Skoog, one Ninth Circuit panel subsequently held that officers were entitled to qualified immunity for making a retaliatory arrest because it was supported by probable cause. See Acosta v. City of Costa Mesa, 718 F.3d 800, 825 (9th Cir. 2013) (quoting Reichle with approval).

*Americans with Disabilities Act ("ADA") Claim*

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  "Discrimination includes a failure to reasonably accommodate a person's disability."  Sheehan v. City & Cnty. of San Francisco ("Sheehan I"), 743 F.3d 1211 (9th Cir. 2014), cert. granted sub nom. City & Cnty. of San Francisco v. Sheehan, 135 S. Ct. 702 (2014), and rev'd in part, cert. dismissed in part sub nom. City & Cnty. of San Francisco v. Sheehan ("Sheehan II"), 135 S. Ct. 1765 (2015).

In order to state a claim under Title II of the ADA, a plaintiff must allege that:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo Cnty., 609 F.3d 1011, 1021 (9th Cir. 2010).

In Sheehan II, the Supreme Court declined to address whether Title II of the ADA applies to arrests.  Sheehan II, 135 S. Ct. at 1772-73.  Thus, this court remains bound by the Ninth Circuit's decision that the ADA applies to arrests.  Sheehan I, 743 F.3d at 1232.  "Courts have recognized at least two types of Title II claims applicable to arrests:  (1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest[.]"  Id.  Plaintiff "bears the initial burden of producing evidence of the existence of a reasonable accommodation," and "[a] public entity may defeat a reasonable accommodation claim by showing 'that making the modifications would fundamentally alter the nature of the service, program, or activity.'"  Id. at 1233.  "[A] public entity is on notice that an individual

needs an accommodation when it knows that an individual requires one, either because that need is obvious or because the individual requests an accommodation." Robertson v. Las Animas County Sheriff's Dep't, 500 F.3d 1185, 1197-98 (10th Cir. 2007). "[T]the question of what constitutes a reasonable accommodation under the ADA requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards." McGary v. City of Portland, 386 F.3d 1259, 1270 (9th Cir. 2004) (internal quotation marks and citation omitted).

Moreover, the Supreme Court also declined to address whether a public entity can be liable for damages under Title II for an arrest made by its police officers. Sheehan II, 135 S. Ct. at 1773. The Ninth Circuit has held that a plaintiff may bring a claim under Title II of the ADA against state entities for damages. Phiffer v. Columbia River Corr. Institute, 384 F.3d 791, 792 (9th Cir. 2004) ("Our precedent clearly commands the conclusion that the State is not entitled to Eleventh Amendment immunity under Title II of the ADA."). Public entities are vicariously liable for the acts of their employees under the ADA. See Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1141 (9th Cir. 2001).

"To recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant." Duvall, 260 F.3d at 1138. In Duvall, the Ninth Circuit held that deliberate indifference is the appropriate standard to use in determining whether intentional discrimination occurred. Id. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. A failure to act must be the result of conduct that is more than negligent and involves an element of deliberateness. Id.

Here, plaintiff, who claims to be a mobility-impaired individual, asserts that in the course of his arrest and transportation to jail and hospital, defendants Taylor and Becker deliberately denied plaintiff's explicit request for his walking cane. Plaintiff further alleges that defendants ultimately left him at the hospital with no transportation home, forcing plaintiff to walk home for miles without his assistive device, resulting in pain, injury, and humiliation. Such allegations appear sufficient, under the authorities discussed above, to state a potentially cognizable claim for

failure to reasonably accommodate plaintiff's disability during the course of the arrest.  Thus, plaintiff states a potentially cognizable ADA claim against the County of Sacramento as the public entity vicariously liable for the actions of defendants Taylor and Becker.

However, to the extent that plaintiff attempts to state an ADA claim against the other individual defendants, such claims are dismissed, because a claim under Title II of the ADA can only be asserted against the public entity; here, the County of Sacramento.  See Sheehan II, 135 S. Ct. at 1173 ("Only public entities are subject to Title II"); 42 U.S.C. § 12131(1).

*Claims Against Remaining Individual Defendants*

As noted above, plaintiff alleges that defendant Witherspoon failed to properly investigate the incident involving defendants Taylor and Becker, and improperly found that the deputies had not violated the law.  However, plaintiff does not have a federally protected interest in an investigation into his allegations of police misconduct, because there is no alleged impact on him (other than perhaps emotional satisfaction) that would result if the investigation found in his favor and recommended discipline against the deputies.  See Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748, 766-68 (2005) ("the benefit that a third party may receive from having someone else arrested for a crime does not trigger protections under the Due Process Clause, neither in its procedural, nor in its 'substantive' manifestations"); see also Alston v. Cnty. of Sacramento, 2012 WL 2839825, at **5-6 (E.D. Cal. Jul. 10, 2012) (finding no protected property interest for purposes of the Due Process Clause of the Fourteenth Amendment in the internal investigation of a citizen's complaint against deputies).  Thus, defendant Witherspoon's alleged failure to properly investigate did not deprive plaintiff of a right under the Constitution or laws of the United States.  Beyond vague and conclusory assertions, plaintiff does not allege any further involvement by defendant Witherspoon in this matter.  As such, all claims against defendant Witherspoon are dismissed.

Plaintiff likewise fails to state a claim against defendant Torretta.  According to plaintiff, defendant Torretta improperly denied plaintiff leave to file a late tort claim.  California Government Code section 911.6 outlines certain circumstances under which leave to file a late tort claim "shall" be permitted.  See Cal. Gov't Code § 911.6(b).  However, even assuming,

without deciding, that defendant Torretta erred in his evaluation of plaintiff's application and in his application of the statute, plaintiff fails to show how such error amounts to a violation of his constitutional or other federal rights. Significantly, as discussed further below, plaintiff had a remedy to seek relief from any alleged error through a petition to the appropriate state superior court. Therefore, plaintiff's claims against defendant Torretta should be dismissed. Additionally, although it is unclear exactly who the "Director" of the Sacramento County Board of Supervisors is, any claim against that individual should likewise be dismissed for the same reasons articulated with respect to defendant Torretta.

Finally, the first amended complaint plainly fails to state a claim against defendant Scott Jones, who is essentially named in his capacity as the Sacramento County Sheriff. Setting aside broad, conclusory, and speculative assertions regarding Jones's ultimate responsibility for the deputies' alleged actions, plaintiff fails to allege any actionable involvement by defendant Jones with respect to the incident at issue. See Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983."). Consequently, all claims against defendant Jones are dismissed.

*Monell Claim Against the County of Sacramento*

Plaintiff further alleges a Monell claim against the County of Sacramento based on the alleged constitutional violations discussed above. See Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978) (holding that, since there is no *respondeat superior* liability under section 1983, municipal entities may be sued under section 1983 only upon a showing that an official policy, custom, or practice of the municipal entity caused the constitutional tort). As one federal district court in California explained:

> In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, customs, or habits." *Warner v. Cnty. of San Diego*, 2011 U.S. Dist. LEXIS 14312, at *10, 2011 WL 662993 (S.D. Cal., Feb. 14, 2011). Prior to the Supreme Court's holdings in *Twombly* and *Iqbal*, the Ninth Circuit had held that "a claim of municipal liability under section

9

> 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.' " *Karim–Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir.1988) (quoting *Shah v. Cnty. of L.A.,* 797 F.2d 743, 747 (9th Cir.1986)). In light of *Twombly* and *Iqbal*, however, something more is required; mere conclusory allegations are insufficient. *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557; *see also Warner*, 2011 U.S. Dist. LEXIS 14312, at *10, 2011 WL 662993.

J.K.G. v. County of San Diego, 2011 WL 5218253, at *8 (S.D. Cal. Nov. 2, 2011).

Here, the first amended complaint again contains no more than vague and conclusory allegations regarding alleged failure to properly train and supervise deputies. Plaintiff alleges no specific facts regarding obvious deficiencies in Sacramento County's training and supervision of deputies. "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*…." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). In short, the facts alleged by plaintiff here relate to a specific incident as opposed to a pervasive problem with a specific Sacramento County policy, practice, or custom.

Accordingly, plaintiff's *Monell* claim against the County of Sacramento is dismissed.

State Law Tort Claims

Before suing a public entity or its employees for state law torts, a plaintiff must first present a timely written tort claim to the entity. See Cal. Gov't Code §§ 911.2 ("A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented…not later than six months after the accrual of the cause of action."); see also Shirk v. Vista Unified School District, 42 Cal. 4th 201, 208-09 (2007) (explaining that claims that "do not allege facts demonstrating either that a claim was timely presented or that compliance with the claims statute is excused" are subject to dismissal).

In light of the above discussion, the only potentially cognizable state law tort claims would have accrued on April 11, 2014, based on plaintiff's interaction with defendants Taylor and Becker. However, the first amended complaint expressly acknowledges that plaintiff failed to file a timely tort claim with the Sacramento County Board of Supervisors within the required six-month period, i.e., by October 11, 2014. Instead, plaintiff's claim was only mailed to the

Sacramento County Board of Supervisors on October 26, 2014.

To be sure, a plaintiff may apply to the public entity for leave to present a late claim, which plaintiff apparently did in this case. See Cal. Gov't Code § 911.4. However, defendant Torretta, in his capacity as claims administrator, denied plaintiff leave to file a late claim. Even assuming, without deciding, that this court agreed with plaintiff that defendant Torretta's denial was somehow erroneous, this court does not have the authority to override that denial and grant plaintiff leave to file a late claim. "If an application for leave to present a claim is denied…a petition may be made to the court for an order relieving the petitioner from [the timely claim presentation requirement.] The proper court for filing the petition is a *superior court* that would be a proper court for the trial of an action on the cause of action to which the claim relates." Cal. Gov't Code § 946.6(a) (emphasis added); see also Crisp v. Wasco State Prison, 2013 WL 3805150 (E.D. Cal. July 22, 2013) ("Since § 946.6(a) was amended to identify a specific court, and that court is the state superior court, this Court will follow the majority position and conclude that only state superior courts have been given the authority to grant relief pursuant to § 946.6(a).) A petition to the state superior court must be filed within six months after the application for leave to file a late claim is denied. Cal. Gov't Code § 946.6(b). Thus, at this point, it appears to be too late for plaintiff to file a petition for relief from the superior court, because defendant Torretta denied plaintiff's application on November 12, 2014.

Therefore, because plaintiff has failed to present a timely written tort claim to the Sacramento County Board of Supervisors, has failed to obtain relief from the timely claim presentation requirement from the Sacramento County Board of Supervisors or an appropriate state superior court, and can no longer obtain such relief, all of plaintiff's state law claims are dismissed with prejudice.

CONCLUSION

In sum, the court finds that plaintiff states potentially cognizable 42 U.S.C. § 1983 claims against defendants Taylor and Becker, and a potentially cognizable ADA claim against the County of Sacramento.

////

The court has carefully considered whether plaintiff should be granted further leave to amend on the remaining claims. However, the court notes that plaintiff has already previously been granted leave to amend. Furthermore, the nature of the factual allegations and claims at issue, as discussed in detail above, convince the court that plaintiff would be unable to cure the identified deficiencies, and that granting further leave to amend would be futile. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996). As such, the remaining claims and defendants are dismissed with prejudice.

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of Court shall re-designate this action as a non-prisoner *pro se* action, with the following case title and number: Givens v. County of Sacramento, et al., 2:15-cv-720-JAM KJN PS.

2. This action shall proceed with the following claims: (a) an excessive force claim in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 against defendants Taylor and Becker; (b) a retaliatory arrest claim in violation of the First Amendment pursuant to 42 U.S.C. § 1983 against defendants Taylor and Becker; and (c) a claim under Title II of the ADA against the County of Sacramento.

3. All other claims and defendants are dismissed with prejudice.

4. Service of process is appropriate for the following defendants: Taylor, Becker, and the County of Sacramento.

5. The Clerk of Court is directed to issue forthwith all process pursuant to Federal Rule of Civil Procedure 4.

6. The Clerk of Court shall send plaintiff one USM-285 form, one summons, this court's scheduling order, and related documents.

7. Plaintiff is advised that to effectuate service, the U.S. Marshal will require:
   a. One completed summons;
   b. One completed USM-285 form for each defendant to be served;
   c. A copy of the first amended complaint for each defendant to be served, with an extra copy for the U.S. Marshal; and

          d.    A copy of this court's scheduling order and related documents for each defendant to be served.

    8. Plaintiff shall supply the U.S. Marshal, within 30 days from the date this order is filed, with all information needed by the U.S. Marshal to effectuate service of process, and shall, within 10 days thereafter, file a brief statement with the court that such documents have been submitted to the U.S. Marshal.

    9. The U.S. Marshal shall serve process, with copies of this court's scheduling order and related documents, within 90 days of receipt of the required information from plaintiff, without prepayment of costs.

    10. If a defendant waives service, the defendant is required to return the signed waiver to the U.S. Marshal. The filing of an answer or a responsive motion does not relieve a defendant of this requirement, and the failure to return the signed waiver may subject a defendant to an order to pay the costs of service by the U.S. Marshal.

    11. The Clerk of Court shall serve a copy of this order on the U.S. Marshal.

    12. Failure to comply with this order may result in any appropriate sanctions, including monetary sanctions and/or dismissal of the action pursuant to Federal Rule of Civil Procedure 41(b).

    IT IS SO ORDERED.

Dated: November 7, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE